# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KRISTINE A. FLYNN,<br><br>                               Plaintiff,<br>v.<br><br>DR. KELLY O'BRIEN,<br><br>                              Defendant. | Case No. 16-CV-453-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

Plaintiff Kristine A. Flynn ("Flynn"), a prisoner, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Dr. Kelly O'Brien ("O'Brien") was deliberately indifferent to Flynn's serious medical condition after Flynn fell inside her cell at Taycheedah Correctional Institution ("TCI"). Flynn also brings a state law claim for medical malpractice stemming from the same incident. O'Brien filed a motion for summary judgment, along with a memorandum of law in support of her motion, a supporting declaration, and proposed findings of material facts. (Docket #50-53). Flynn filed an opposition brief, (Docket #55), but did not respond to O'Brien's proposed facts. For the reasons stated below, the Court will grant summary judgment in favor of O'Brien.[1]

---

[1]This case was originally assigned to Judge Charles N. Clevert, and was reassigned to this branch of the court upon Judge Clevert's retirement. Following reassignment, Flynn filed a motion for recusal. (Docket #47). In support of her motion, Flynn explains that this Court previously presided over another civil action in which she was the plaintiff, which resulted in dismissal, and she believes this is evidence of the Court's bias against her. However, adverse rulings are not a ground for recusal and show no bias in and of themselves. 28 U.S.C. § 144, 455;

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [her] case is convincing, [she] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## 3. BACKGROUND

### 3.1 Plaintiff's Failure to Dispute the Material Facts

The relevant facts are undisputed because Flynn failed to dispute them. In the Court's scheduling order, entered September 19, 2016, Flynn

---

*see also Liteky v. United States*, 510 U.S. 540, 555–56 (1994). Flynn points to no other considerations which would support a reasonable person's conclusion that the Court is biased against her. Her motion for recusal will be denied.

was warned about the requirements for opposing a motion for summary judgment. (Docket #25 at 1-2). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission.

In O'Brien's motion for summary judgment, she too warned Flynn about the requirements for her response as set forth in Federal and Local Rules 56. (Docket #50). She was provided with additional copies of those Rules along with O'Brien's motion. *Id.* at 3-12. In connection with her motion, O'Brien filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #52). It contained short, numbered paragraphs concisely stating those facts she proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

Flynn submitted an eight-page "motion for non-dismissal of case" in response. (Docket #55). The submission, bereft of factual citations or sworn testimony by Flynn, is comprised mostly of unsupported legal conclusions about O'Brien's allegedly deficient care. At one point in her submission, Flynn claims that a wrist x-ray revealed a dislocation, and that she had surgery, but that she has lost the ability to move her wrist up and down and from side to side. *Id.* at 3. She also claims that several other doctors have diagnosed her with several other medical issues. *Id.* at 4-6. But Flynn provides no evidence for any of these factual assertions; her submission is not accompanied by any documents or exhibits. In short, Flynn's

submission does not attempt to dispute O'Brien's proposed facts about the events at issue in this case.[2]

Despite being twice warned of the strictures of summary judgment procedure, Flynn ignored those rules by failing to properly dispute O'Brien's proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as her lawyer, and it cannot delve through the record to find favorable evidence for her. Thus, the Court will, unless otherwise stated, deem the defendant's facts undisputed for purposes of deciding her motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 3.2 Relevant Material Facts[3]

At all times relevant to this case, Flynn was an inmate and O'Brien was a supervising physician at TCI. On January 6, 2016, Flynn says that she fell inside her cell at TCI and hit her head. No one saw her fall, but she called

---

[2]Before O'Brien filed her motion for summary judgment, Flynn filed a "motion for order to enter evidence as to hip and wrist problems and surgery" and a "motion to enter newly discovered evidence." (Docket #44 and #48). Flynn filed a total of thirty pages of "proposed evidence" with these motions, comprised of various medical records. Flynn's "evidence" was not submitted in conjunction with a summary judgment motion of her own, and was not filed in response to the defendant's summary judgment motion. Because Flynn's proposed evidence was not submitted in accordance with the federal and local rules governing dispositive motion practice, of which she was warned on several occasions, the Court will not apply that evidence to its ruling on summary judgment. Her motions will be denied, in any event, as a motion to "enter" evidence is not authorized by any rule of procedure.

[3]These facts are taken from O'Brien's proposed findings of fact, (Docket #52), unless otherwise noted.

out for help after getting up and correctional officers responded to her cell. Those officers enlisted the help of the health care staff on duty at TCI. A nurse reported to Flynn's cell and, after conducting an initial evaluation, gave Flynn an ice pack for a bump on her head. Flynn was then taken by wheelchair to the health services unit ("HSU") for a more complete evaluation.

O'Brien assessed Flynn within approximately fifteen minutes of her arrival in the HSU. Flynn reported experiencing dizziness, numbness, and decreased movement in her right leg. Neurological and ocular tests were within normal range, but hand grip tests resulted in abnormalities which were inconsistent with the other objective medical evidence. Because Flynn's subjective reports about her injuries were sufficiently at odds with O'Brien's objective medical findings, O'Brien suspected Flynn's reported symptoms might be due to a psychological issue—a factitious or conversion disorder. A patient with a factitious disorder produces or exaggerates medical symptoms for secondary gain. A patient with a conversion disorder reports physical symptoms which actually arise from psychological causes.

Nonetheless, O'Brien ordered neurological checks and vital sign checks every hour for four hours, then every four hours, then every eight hours to ensure that any changes in Flynn's health would be discovered in an appropriate timeframe. O'Brien also completed an examination of the bump on Flynn's head, reviewed her heart rate, examined her right leg, and checked for any other possible cause of Flynn's reported symptoms.

O'Brien told Flynn that the cause of her symptoms was currently unknown, but that O'Brien would have her remain in the HSU for continued monitoring rather than return Flynn to her living unit. O'Brien

also ordered pain medication at Flynn's request. At that time, because O'Brien made no definitive diagnosis as to the cause of Flynn's reported symptoms, no specific additional treatment was ordered.

At O'Brien's instruction, Flynn remained in the HSU and was monitored by the nursing staff there for the next four days. O'Brien met with Flynn again on January 7 to examine her and review the nurses' notes. She was still unable to find any medical explanation for the fall. On January 8, O'Brien examined Flynn again and requested a consultation with two other doctors, a psychiatrist and psychologist. Those doctors concluded that there was likely a psychiatric component to Flynn's condition, probably factitious disorder. A treatment plan was developed.

Flynn remained in the HSU on January 9, making steady progress in regaining her health. By January 10, O'Brien determined it was safe to discharge Flynn back to her housing unit. O'Brien continued to work with Flynn in the following weeks and months to better diagnose a cause of her various symptoms. Flynn continued to complain of similar symptoms on and off, but, again, Flynn's declared symptoms did not fit a recognized medical function. Flynn received consults from two community clinics near TCI, a neurology clinic and a pain clinic, and she also continued to receive follow-up appointments with the TCI psychiatric and psychological services staff.

None of the outside medical evaluations done by specialists suggested that any of O'Brien's care had been inappropriate, or that it had caused any damage to Flynn.

4. **ANALYSIS**

    4.1 **Eighth Amendment Deliberate Indifference**

The Eighth Amendment "safeguards prisoners against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To determine whether the Eighth Amendment has been violated in the prison medical context, the Court performs a "two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Id.* at 728 (citations omitted). O'Brien does not contest that Flynn's medical condition was serious,[4] but she argues that she was not deliberately indifferent to Flynn's medical condition.

The Seventh Circuit instructs that the Court should look to O'Brien's subjective state of mind to determine whether she acted with deliberate indifference:

> For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur. But showing mere negligence is not enough. Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim. Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm. Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety.

---

[4] O'Brien states that "*[f]or the purposes of this motion only*, defendant O'Brien will stipulate that Flynn's medical need on January 6 was 'serious' for the purpose of meeting the objective prong of the deliberate indifference standard." (Docket #51 at 10) (emphasis in original).

*Id.* (internal citations omitted).

In a case where the plaintiff receives some medical care, the plaintiff's mere disagreement with the course of treatment prescribed by a health care provider is not sufficient to prove an Eighth Amendment claim. *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003). Put another way, "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation and internal quotation marks omitted).

The deliberate indifference standard, then, imposes a "high hurdle" for a plaintiff to overcome. *Collins v. Seeman*, 462 F.3d 757, 761-62 (7th Cir. 2006). Flynn cannot overcome this hurdle. The undisputed evidence shows that O'Brien examined Flynn promptly following her alleged fall, ordered tests aimed at determining the cause of Flynn's reported symptoms, prescribed pain medication at Flynn's request, and ordered regular monitoring in the HSU for days following the fall so that Flynn could appropriately recover. O'Brien also arranged for specialists inside and outside TCI to assess Flynn and assist in a diagnosis. None of the evidence produced suggests Flynn's treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" Flynn's condition. *Snipes*, 95 F.3d at 592. In fact, the evidence suggests O'Brien's treatment was careful and thorough.

The only documentary evidence Flynn cites in opposition to O'Brien's motion is a hospital record from September 21, 2016, which shows that Flynn's wrist was x-rayed and that a ligament issue (scapholunate

dissociation) was noted. (Docket #55 at 1; #53-1 at 59). This hospital record is dated September 21, 2016—nearly nine months after her fall. Flynn appears to argue that "nowhere does it say that [her wrist injury] couldn't be from" the fall. (Docket #55 at 1).[5] But the balance of the evidence shows that Flynn did not complain of a wrist injury on January 6, 2016, when she saw O'Brien. Even if the hospital record could establish that Flynn's wrist injury arose from the January 6 fall, it does nothing to prove that O'Brien knew about the wrist injury and ignored it. The evidence does not suggest Flynn complained to O'Brien about her wrist whatsoever, or that O'Brien independently recognized Flynn was suffering from a wrist injury.

In sum, Flynn has not met her burden to show that O'Brien "*actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. Because no reasonable jury could find that O'Brien was deliberately indifferent to Flynn's medical condition, Flynn's Eighth Amendment claim must be dismissed.[6]

### 4.2 Medical Malpractice

Flynn's second claim, for medical malpractice, arises under Wisconsin state law. Wisconsin defines medical malpractice as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort,* 595 N.W.2d 423, 435 (1999). The only reason O'Brien advances in support of her argument that Flynn's medical malpractice claim should be dismissed is that Flynn

---

[5]This document was attached to O'Brien's submissions, not Flynn's.

[6]Because Flynn's Eighth Amendment claim will be dismissed on its merits, the Court need not address O'Brien's argument for qualified immunity.

has not identified an expert who could provide testimony establishing the appropriate standard of care in this case. (Docket #51 at 14-16).

Indeed, "Wisconsin requires expert testimony to establish medical negligence except in situations where the errors were of such a nature that a layperson could conclude from common experience that such mistakes do not happen if the physician had exercised proper skill and care." *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) (citing *Christianson v. Downs*, 279 N.W.2d 918, 921 (Wis. 1979)). However, the Seventh Circuit has noted that "Wisconsin's preference for expert testimony in proving the standard of care in medical malpractice cases is a rule of evidence, not a substantive rule of law. … [W]e are doubtful that Wisconsin's expertise rule need be applied in federal court where the Federal Rules of Evidence apply exclusively." *Id.* (citing *Ueland v. United States,* 291 F.3d 993, 998 (7th Cir. 2002)). In federal court, expert testimony is not required "when the symptoms exhibited by the plaintiff are not beyond a layperson's grasp." *Id.* (citing *Ledford v. Sullivan,* 105 F.3d 354, 360 (7th Cir. 1997) (no expert needed in deliberate indifference case where plaintiff experienced nausea, dizziness, vomiting, a crawling sensation on his skin, emotional and mental regression, and depression when the defendants deprived him of his medication)).

Ultimately, the Court need not decide whether expert testimony is required in this case to prove Flynn's state law medical malpractice claim. The federal supplemental jurisdiction statute permits a district court to decline to exercise supplemental jurisdiction over a state law claim in certain instances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Hansen v. Board of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the

principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."). Having already dismissed Flynn's only claim arising under federal law, the best course of action is to decline to exercise supplemental jurisdiction over the remaining state law claim.

The Court will therefore dismiss Flynn's medical malpractice claim without prejudice. If Flynn chooses to pursue the claim in a Wisconsin court, the court in that action can opine on the necessity of expert testimony.

## 5. CONCLUSION

For the reasons stated above, the record and the relevant authorities oblige the Court to grant summary judgment in favor of defendant O'Brien and dismiss this case in its entirety.[7]

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #50) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claim (Docket #34 at 3) be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's medical malpractice claim (Docket #34 at 4) be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for recusal (Docket #47) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions for the entry of evidence (Docket #44 and #48) be and the same are hereby **DENIED**;

---

[7]Having concluded that dismissal is appropriate, the Court will deny Flynn's "motion for jury trial and motion for witness list," (Docket #54), which she filed along with her brief in opposition to O'Brien's summary judgment motion.

**IT IS FURTHER ORDERED** that Plaintiff's motion for a jury trial (Docket #54) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge